UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 21-CV-61769-GAYLES/STRAUSS

**CORPORATE INSURANCE ADVISORS, LLC,**

    Plaintiff,

v.

**BARBRA A. ADDEO,** *et al.*,

    Defendants.

_____/

## REPORT AND RECOMMENDATION

THIS MATTER came before the Court upon Barbra A. Addeo, Lorraine R. Carrio, and Donna J. Marchese's (collectively, "Individual Defendants") Motion to Dismiss Plaintiff's Amended Complaint ("Motion") (DE 53). The District Court referred the case to me, pursuant to 28 U.S.C. § 636(b)(1) and the Magistrate Judge Rules of the Local Rules of the Southern District of Florida, for ruling on all pre-trial, non-dispositive matters and a report and recommendation on all dispositive matters (DE 15). I have reviewed the Motion, the Response (DE 61), the Reply (DE 69), and all other pertinent portions of the record. For the reasons discussed herein, I respectfully **RECOMMEND** that the Motion be **GRANTED-IN-PART** and **DENIED-IN-PART**.

## BACKGROUND

Plaintiff is an insurance agency offering services related to the insurance industry at the commercial and individual level. (DE 44 at ¶4). The Individual Defendants were all affiliated with Plaintiff. *Id.* at ¶11. Addeo and Carrio served as insurance brokers or Producers for Plaintiff, and Marchese was Carrio's administrative assistant. *Id.* Addeo and Carrio started their business relationships with Plaintiff on November 1, 2006 and held the titles of Vice President and

Executive Vice President, respectively. *Id.* Marchese, who is Carrio's cousin, started working for Carrio in December 2015. *Id.*

Plaintiff uses a software database called EPIC to house its client information. *Id.* at ¶12. EPIC is password protected and contains various details about Plaintiff's clients, such as: client names, specific policy coverage types, name of the insurer providing coverage, policy number, expiration date of the policy, the annualized policy premium, the contact information for each client, and the assigned Producer. *Id.* EPIC allows users to generate Summaries of Insurance and Expiration Reports. *Id.* at ¶¶12, 13, 17. Summaries of Insurance provide the details about the insurance policies Plaintiff's clients had, and Expiration Reports show all the insurance policies expiring at a designated time. *Id.* at ¶¶12, 13, 17. Carrio did not have access to EPIC. *Id.* at ¶14. Marchese had access to EPIC, and Carrio relied on Marchese to generate information from the database so that she could service her clients. *Id.* Plaintiff required its employees and all others affiliated with it (including the Individual Defendants) to keep their information confidential, particularly upon leaving the company. *Id.*

On August 10, 2021, at Carrio's request, Marchese prepared and emailed to Carrio a Summary of Insurance for two of her clients. *Id.* at ¶¶17, 18. On August 11, at Carrio's request, Marchese prepared and emailed to Carrio a Summary of Insurance for another client and a list of clients with renewal dates in September and October 2021. *Id.* at ¶¶19, 20. Carrio forwarded the renewal list to her personal email address. *Id.* at ¶20. On August 12, upon Carrio's request, Marchese emailed Carrio a list of clients with renewal dates in November and December 2021 and an Expiration Report for August 2021 through August 2022. *Id.* at ¶¶20, 21. This Expiration Report contained information regarding over 1,600 policies in which either Carrio or Addeo (or both Carrio and Addeo) were listed as the Producer. *Id.* at ¶21. As noted above, this information

included client names, policy numbers, policy coverage types, and policy expiration dates. *Id.* Carrio also forwarded this email to her personal address. *Id.*

On August 15, at 12:49 A.M., Carrio sent an email to a client with a proposal to renew their insurance coverage. *Id.* at ¶22. That same day, Carrio and Addeo sent similarly-worded resignation letters to Plaintiff. *Id.* at ¶15. On August 16, 2021, Addeo and Carrio signed agreements with Liberty Inc. and Liberty LLC. *Id.* Plaintiff alleges that some of the clients who Addeo and Carrio serviced (both individually and collectively) while working for Plaintiff are now being serviced by Liberty Inc. and Liberty LLC. *Id.* at ¶¶17, 22, 23. According to Plaintiff, fifty-one (51) client policies they previously serviced are now being serviced by Liberty Inc. and Liberty LLC. *Id.* at ¶30.

Plaintiff's Amended Complaint brings counts against all Defendants for violations of the Federal Defend Trade Secrets Act ("FDTSA") (Count I – Carrio, Count II - Addeo, Count III - Marchese, Count IV – Liberty Inc., Count V – Liberty LLC) and Florida Uniform Trade Secrets Act ("FUTSA") (Count VI – Carrio, Count VII – Addeo, Count VIII – Marchese, Count IX – Liberty Inc., Count X – Liberty LLC), and counts against Carrio and Addeo for breach of their employment contracts (Count XI - Carrio, Count XII - Addeo). *Id.* at ¶¶32-84. The Individual Defendants filed the instant Motion seeking to dismiss the Amended Complaint. (DE 53). The Motion's arguments are directed toward Counts I, II, III, VI, VII, VIII of the Amended Complaint. *Id.* at 9 (opining that "Counts 1-3, 6-8 fail to state a cause of action"). Liberty Inc. and Liberty LLC subsequently filed a notice of joinder to the Individual Defendant's Motion. (DE 79).

## **LEGAL STANDARD**

"To survive a motion to dismiss [under Federal Rule of Civil Procedure 12(b)(6)], a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is

3

plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). Although Federal Rule of Civil Procedure 8(a) does not require "detailed factual allegations," it does require "more than labels and conclusions"; a "formulaic recitation of the cause of action will not do." *Twombly*, 550 U.S. 544, 555 (2007). "[F]actual allegations must be enough to raise a right to relief above the speculative level" and must be sufficient "to state a claim for relief that is plausible on its face." *Id.* at 555, 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. "The mere possibility the defendant acted unlawfully is insufficient to survive a motion to dismiss." *Sinaltrainal v. Coca-Cola Co.*, 578 F.3d 1252, 1261 (11th Cir. 2009) (citing *Iqbal*, 556 U.S. at 679)).

In considering a Rule 12(b)(6) motion to dismiss, the court's review is generally "limited to the four corners of the complaint." *Wilchombe v. TeeVee Toons, Inc.*, 555 F.3d 949, 959 (11th Cir. 2009) (quoting *St. George v. Pinellas Cnty.*, 285 F.3d 1334, 1337 (11th Cir. 2002)). Courts must accept the factual allegations in the complaint as true and view them in the light most favorable to the plaintiff. *See Cambridge Christian Sch., Inc. v. Florida High Sch. Athletic Ass'n*, 942 F.3d 1215, 1229 (11th Cir. 2019); *Tims v. LGE Cmty. Credit Union*, 935 F.3d 1228, 1236 (11th Cir. 2019). But "[c]onclusory allegations, unwarranted deductions of facts or legal conclusions masquerading as facts will not prevent dismissal." *Jackson v. Bellsouth Telecomms.*, 372 F.3d 1250, 1262-63 (11th Cir. 2004) (citation omitted); *see also Iqbal*, 556 U.S. at 678 ("[T]he tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions.").

## ANALYSIS

The DTSA provides a cause of action for the "theft of trade secrets used in interstate or foreign commerce." *M.C. Dean, Inc. v. City of Miami Beach, Fla.*, 199 F. Supp. 3d 1349, 1353 (S.D. Fla. 2016). The FUTSA similarly provides a cause of action for the theft of trade secrets. *See Yellowfin Yachts, Inc. v. Barker Boatworks, LLC*, 898 F.3d 1279, 1297 (11th Cir. 2018) (citing Fla. Stat. §§ 688.001-009).

"Trade secrets" are defined broadly under the FDTSA as:

[A]ll forms and types of financial, business, scientific, technical, economic, or engineering information, including patterns, plans, compilations, program devices, formulas, designs, prototypes, methods, techniques, processes, procedures, programs, or codes, whether tangible or intangible, and whether or how stored, compiled, or memorialized physically, electronically, graphically, photographically, or in writing if—

(A) the owner thereof has taken reasonable measures to keep such information secret; and

(B) the information derives independent economic value, actual or potential, from not being generally known to, and not being readily ascertainable through proper means by, another person who can obtain economic value from the disclosure or use of the information[.]

18 U.S.C. § 1839(3).

The FUTSA also defines "trade secrets" broadly:

information, including a formula, pattern, compilation, program, device, method, technique, or process that:

(a) Derives independent economic value, actual or potential, from not being generally known to, and not being readily ascertainable by proper means by, other persons who can obtain economic value from its disclosure or use; and

(b) Is the subject of efforts that are reasonable under the circumstances to maintain its secrecy.

Fla. Stat. § 688.002(4).

Liability under the FDTSA and the FUTSA requires an act of misappropriation. *See M.C. Dean, Inc.*, 199 F. Supp. 3d at 1353. The FDTSA defines "misappropriation" as:

> (A) acquisition of a trade secret of another by a person who knows or has reason to know that the trade secret was acquired by improper means; or
>
> (B) disclosure or use of a trade secret of another without express or implied consent by a person who—
>
>> (i) used improper means to acquire knowledge of the trade secret;
>>
>> (ii) at the time of disclosure or use, knew or had reason to know that the knowledge of the trade secret was—
>>
>>> (I) derived from or through a person who had used improper means to acquire the trade secret;
>>>
>>> (II) acquired under circumstances giving rise to a duty to maintain the secrecy of the trade secret or limit the use of the trade secret; or
>>>
>>> (III) derived from or through a person who owed a duty to the person seeking relief to maintain the secrecy of the trade secret or limit the use of the trade secret; or
>>
>> (iii) before a material change of the position of the person, knew or had reason to know that—
>>
>>> (I) the trade secret was a trade secret; and
>>>
>>> (II) knowledge of the trade secret had been acquired by accident or mistake

18 U.S.C. § 1839(5). The "improper means" referenced in the statute includes "theft, bribery, misrepresentation, breach or inducement of a breach of a duty to maintain secrecy, or espionage through electronic or other means." 18 U.S.C. § 1839(6).

Similarly, the FUTSA defines misappropriation as the:

> (a) Acquisition of a trade secret of another by a person who knows or has reason to know that the trade secret was acquired by improper means; or

(b) Disclosure or use of a trade secret of another without express or implied consent by a person who:

1. Used improper means to acquire knowledge of the trade secret; or

2. At the time of disclosure or use, knew or had reason to know that her or his knowledge of the trade secret was:

    a. Derived from or through a person who had utilized improper means to acquire it;

    b. Acquired under circumstances giving rise to a duty to maintain its secrecy or limit its use; or

    c. Derived from or through a person who owed a duty to the person seeking relief to maintain its secrecy or limit its use; or

3. Before a material change of her or his position, knew or had reason to know that it was a trade secret and that knowledge of it had been acquired by accident or mistake.

Fla. Stat. § 688.002(2). As in the FDTSA, "improper means" under the FUTSA includes "theft, bribery, misrepresentation, breach or inducement of a breach of a duty to maintain secrecy, or espionage through electronic or other means." *See* Fla. Stat. § 688.002(1).

I find that Plaintiff's claims against Carrio and Addeo are sufficient to survive but that the claims against Marchese should be dismissed. First, the Individual Defendants argue that the information identified does not qualify as trade secret information under the relevant statutes. Next, the Individual Defendants argue that Plaintiff has failed to sufficiently allege an act of misappropriation. Finally, the Individual Defendants argue that the allegations as to Addeo and Marchese are conclusory and contain incorrect factual assertions. I address each of these arguments in turn.

    **I.**    **Information Qualifying as Trade Secret**

Defendants argue that Plaintiff failed to describe the subject trade secrets with "reasonable particularity." However, to survive a motion to dismiss in a case alleging misappropriation of

trade secrets, "the plaintiff need only allege sufficient facts to plausibly show a trade secret was involved and to give the defendant notice of the material it claims constituted a trade secret." *DynCorp Int'l v. AAR Airlift Grp., Inc.*, 664 F. App'x 844, 848 (11th Cir. 2016). In other words, a plaintiff must do more than "just identify broad categories of information." *Id.* Here, Plaintiff has met this standard. It alleged that its EPIC database contained a compilation of information regarding Plaintiff's clients and the details of their insurance policies. Specifically, the database contained client names, policy coverage types of each client, name of the insurer providing coverage, policy number, expiration date of the policy, the policy premium, the contact information for each client, and the Producer assigned to the client. The emails Marchese sent to Carrio, which Carrio eventually forwarded to her personal email address, also contained this information (client names, client policy numbers, policy coverage types, policy expiration dates).

Databases and lists with client information are typically seen as protectable trade secrets. *See AutoNation, Inc. v. Mulleavey*, 19-60833-CIV, 2019 WL 4693575, at *4 (S.D. Fla. Aug. 22, 2019)*; *Sentry Data Sys., Inc. v. CVS Health*, 361 F. Supp. 3d 1279, 1293 (S.D. Fla. 2018). The Individual Defendants make much of the fact that insurance companies and clients may have had similar information in their possession. But even if some of the client and insurance policy information was available via other means, the way in which that information is compiled in Plaintiff's EPIC database can still support a claim of trade secret protection. *See Capital Asset Research Corp. v. Finnegan*, 160 F.3d 683, 686 (11th Cir. 1998) (stating that a unique compilation of publicly available information may qualify as a trade secret). Plaintiff also alleged that the database was password protected and limited to certain personnel within their office. This shows that Plaintiff took steps to protect the secrecy of the information in the database. *See M.C. Dean, Inc.*, 199 F. Supp. 3d at 1356. Additionally, Plaintiff's contention that this information was

valuable in helping its employees secure new or renewal coverage for the clients they serve shows that the information had independent economic value and strengthens Plaintiff's claim for trade secret protection. *See Ultimate Fitness Grp., LLC v. Anderson*, 18-CV-60981, 2019 WL 8810367, at *4 (S.D. Fla. Mar. 13, 2019). Therefore, Plaintiff has sufficiently identified the alleged trade secret information at issue and made sufficient allegations to plausibly conclude that this information constituted trade secret information.

## II. Misappropriation

As for the allegations of misappropriation, the Individual Defendants acknowledge that Plaintiff has identified four instances where either Marchese or Carrio sent information to Carrio's email. Nevertheless, the Individual Defendants claim that the assertions in the Amended Complaint are vague and conclusory in that they do not explain what Addeo has to do with the claims. Individual Defendants also argue that no claim of misappropriation can be had against Marchese and Carrio because they were in lawful possession of the information at the time it was emailed. However, I find that the Amended Complaint alleges a plausible claim of misappropriation as to Carrio and Addeo based on the alleged subsequent possession and use of the information at issue following their departure from Plaintiff and is sufficient to withstand a motion to dismiss. *See Iqbal*, 556 U.S. at 678 (stating that to withstand a motion to dismiss a plaintiff must "plead[ ] factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged").

### a. Carrio

The allegations against Carrio are the most detailed. Plaintiff alleges that Carrio asked Marchese to provide her information from the database regarding the clients she serviced on August 10, 11, and 12. This information included details on those clients' insurance policies,

including when the policies were coming up for renewal. Carrio asked for policies with renewal dates from August 2021 through August 2022. Carrio emailed a renewal proposal to one of the clients she serviced on August 15, 2021, and then tendered her letter of resignation hours later. Carrio formally affiliated with Liberty Inc. and Liberty LLC on August 16. Shortly thereafter, some of the clients Carrio serviced while working for Plaintiff (and whose information was attached to the emails she forwarded to herself) transferred their business to Liberty Inc. and Liberty LLC.

The Individual Defendants argue that Plaintiff's factual allegations are conclusory because they do not connect Carrio with Liberty until August 16 and do not show how she used their information beyond August 18. However, as referenced above, Plaintiff stated that the information Carrio allegedly misappropriated was valuable in helping its employees secure new or renewal coverage for the clients they served. Thus, Carrio's behavior on August 10, 11, 12, and 15, and the fact that some of the clients she served with Plaintiff followed her to Liberty allow for an inference of misappropriation. Accordingly, the Amended Complaint contains a sufficient basis to conclude that Carrio misappropriated Plaintiff's confidential information by disclosing or using that information while working for Liberty Inc. and Liberty LLC. Specifically, there are sufficient allegations to infer that she disclosed or used such information when she knew or had reason to know that the information was "acquired under circumstances giving rise to a duty to maintain the secret of the trade secret or limit the use of the trade secret." *See* 18 U.S.C. § 1839(5)(B)(ii)(II); Fla. Stat. § 688.002(2)(b)2.b.; *New Country Motor Cars of Palm Beach, LLC v. Beresford*, 17-80856-CIV, 2019 WL 3890456, at *8 (S.D. Fla. May 3, 2019) (stating that "[m]isappropriation . . . is a forgone conclusion where a trusted employee discloses trade secrets after receiving them under circumstances of obvious confidentiality and contractual obligations" (citations omitted)).

### b. Addeo

Although not as detailed, the Amended Complaint contains a plausible basis to infer that Addeo is liable for misappropriation by at least use. *See* 18 U.S.C. § 1839(5)(B); Fla. Stat. § 688.002(2)(b); *Beresford*, 17-80856-CIV, 2019 WL 3890456, at *8. Addeo worked alongside Carrio and shared clients with her. The information Carrio emailed to her personal email contained some of the client accounts she shared with Addeo. Addeo and Carrio tendered identical letters of resignation on the same day. Addeo formally affiliated with Liberty Inc. and Liberty LLC on the same day as Carrio (the day after they resigned from Plaintiff). These facts create a reasonable inference that Carrio and Addeo coordinated their actions. After Addeo affiliated with Liberty Inc. and Liberty LLC, a client serviced *solely* by her transferred its business from Plaintiff to Liberty Inc. and Liberty LLC, creating a plausible inference that Addeo utilized misappropriated client information to facilitate this transfer.

The Individual Defendants argue that the claims against Addeo are conclusory. They particularly criticize Plaintiff's allegation that Carrio acted "with the knowledge and participation of Addeo" as unsupported by conjecture. But this characterization neglects to consider the abovementioned circumstantial facts in the light most favorable to Plaintiff. *See Balearia Caribbean Ltd., Corp. v. Calvo*, 16-23300-CIV, 2017 WL 8780944, at *7 (S.D. Fla. Aug. 3, 2017). To be sure, the allegations against Addeo are not overwhelming, particularly when it comes to Addeo's knowledge and acquiescence of Carrio's alleged actions. However, when considered in the light most favorable to Plaintiff and taking all inferences in Plaintiff's favor, the facts support a plausible claim that Addeo has misappropriated the information from the EPIC database by "use" while working for Liberty Inc. and Liberty LLC. *See Penalty Kick Mgmt. Ltd. v. Coca Cola Co.*, 318 F.3d 1284, 1292 (11th Cir. 2003) (stating that the "use" of a trade secret is defined broadly).

### c. Marchese

However, the Amended Complaint falls short regarding Marchese. The factual allegations surrounding Marchese primarily concern her sending the information at issue (Expiration Reports and Summaries of Insurance) to Carrio via email, at Carrio's direction, on August 10, 11, and 12, while both were still affiliated with Plaintiff. Marchese had access to EPIC and obtained the Expiration Reports and Summaries of Insurance from that database. On August 15, several days after Marchese sent the information to Carrio, Carrio resigned from Plaintiff and proceeded to affiliate with Liberty Inc. and Liberty LLC on August 16 and some of Carrio's clients followed her. Thus, as Plaintiff's Response makes clear, Plaintiff's theory of misappropriation against Marchese hinges on Marchese's disclosure of customer information to Carrio while they were both still affiliated with Plaintiff. There are no allegations (nor does Plaintiff appear to argue) that Marchese acquired the trade secret information through improper means or accident or mistake. *See* 18 U.S.C. § 1839(5); Fla. Stat. § 688.002(2). Therefore, for such disclosure to be actionable, Marchese would have needed to make the disclosure "without express or implied consent," at a time when Marchese "knew or had reason to know that her knowledge of the trade secret was . . . acquired under circumstances giving rise to a duty to maintain its secrecy or limit its use." 18 U.S.C. § 1839(5)(B)(ii)(II); Fla. Stat. § 688.002(2)(b)2.b.

The Amended Complaint alleges that Marchese "knew or had reason to know that Carrio intended to use CIA's trade secrets for a purpose inconsistent with Carrio's obligations, and Marchese's obligations, to maintain the secrecy of CIA's trade secrets and limit use of CIA's trade secrets." (DE 44 at ¶¶ 40, 60). In its Response, Plaintiff asserts that it is plausible or reasonable to conclude that Marchese knew of Carrio's intent to resign a few days after requesting the information Marchese provided. Although not explicit in the Response, Plaintiff presumably

argues that such knowledge of Carrio's intent would indicate to Marchese both that she did not have Plaintiff's consent to disclose the information (which she presumably otherwise would have to provide the information to one of Plaintiff's employees) and that Marchese was in circumstances giving rise to her own duty to protect that information.

Even assuming such knowledge would be sufficient to meet these two requirements, the factual allegations in the Amended Complaint about Marchese are insufficient to raise the possibility of Marchese having this knowledge – and thus Plaintiff's entitlement to relief against Marchese – above the speculative level. *See, Twombly*, 550 U.S. at 555; *Simpson v. Sanderson Farms, Inc.*, 744 F.3d 702, 712 (11th Cir. 2014); *Arch Ins. Co. v. Clements, Purvis & Stewart, P.C.*, 434 Fed. Appx. 826, 828 (11th Cir. 2011); *Island Hotel Props., Inc. v. Fireman's Fund Ins. Co.*, 512 F. Supp. 3d 1323, 1328 (S.D. Fla. 2021). The Amended Complaint contains no allegations that Carrio informed Marchese of her plans nor any allegations of facts known to Marchese from which Marchese likely would have inferred Carrio's plans. Nor does the Amended Complaint allege actions that Marchese took from which one could plausibly infer that she had such knowledge. Instead, Plaintiff's argument rests on the supposition that Carrio must have told her assistant (and cousin) of her plan to resign several days in advance. But, again, this is mere speculation insufficient to survive a motion to dismiss. Therefore, Counts III and VIII should be dismissed.[1]

---

[1] As Plaintiff did not request leave to amend its complaint (for the second time), the Court should decline to grant such relief *sua sponte*. *See Wagner v. Daewoo Heavy Indus. Am. Corp.*, 314 F.3d 541, 542 (11th Cir. 2002) ("A district court is not required to grant a plaintiff leave to amend his complaint sua sponte when the plaintiff, who is represented by counsel, never filed a motion to amend nor requested leave to amend before the district court"); *see also Avena v. Imperial Salon & Spa, Inc.*, 740 Fed. Appx. 679, 683 (11th Cir. 2018) ("[W]e've rejected the idea that a party can await a ruling on a motion to dismiss before filing a motion for leave to amend).

13

### III. Factual Disputes

To the extent that the Individual Defendants contend that the factual assertions in the Amended Complaint are incorrect or not credible, that contention is improper at this stage. The factual allegations in Plaintiff's Amended Complaint must be accepted as true. *See Leib v. Hillsborough Cnty. Pub. Transp. Comm'n*, 558 F.3d 1301, 1305 (11th Cir. 2009). As seen above, the allegations are sufficient to put the Individual Defendants on notice of how they violated the law. *See Avet-USA, Inc. v. JohnsonDiversey, Inc.*, 06-60422-CIV, 2007 WL 9698348, at *2 (S.D. Fla. Jan. 8, 2007).[2]

### **CONCLUSION**

For the reasons discussed above, I respectfully **RECOMMEND** that the Motion [DE 53] be **GRANTED-IN-PART** and **DENIED-IN-PART.** Specifically, I recommend that the Motion be granted as to Counts III and VIII and denied as to all other counts.

The parties will have fourteen (14) days from the date of being served with a copy of this Report and Recommendation within which to file written objections, if any, with the Honorable Darrin P. Gayles, United States District Judge. Failure to timely file objections shall bar the parties from a *de novo* determination by the District Judge of an issue covered in the Report and shall bar the parties from attacking on appeal unobjected-to factual and legal conclusions contained in this Report except upon grounds of plain error if necessary in the interest of justice. *See* 28

---

[2] Liberty Inc. and Liberty LLC filed a notice of joinder regarding the individual defendants' Motion. (DE 80). To the extent the notice of joinder is construed as a separate motion, it is procedurally improper. Liberty Inc. and Liberty LLC filed and Answer (DE 79) before indicating their intent to join the Individual Defendants' Motion, which was based on the failure to state a claim under Federal Rule of Civil Procedure 12(b)(6). *See* Fed. R. Civ. P. 12(b) (stating that a motion asserting the failure to state a claim under Rule 12(b)(6) must be made before a responsive pleading). In any event, the notice of joinder is of no moment if the Court adopts the recommendation to deny the Motion as to Carrio and Addeo.

U.S.C. § 636(b)(1); *Thomas v. Arn*, 474 U.S. 140, 149 (1985); *Henley v. Johnson*, 885 F.2d 790, 794 (11th Cir. 1989); 11th Cir. R. 3-1.

**DONE AND SUBMITTED** in Fort Lauderdale, Florida this 27th day of June 2022.

*Jared Strauss*
Jared M. Strauss
United States Magistrate Judge